UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SGM TACTICAL, LLC, ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | No. 3:11-CV-528 |
| ) | (SHIRLEY) |
| V. ) | |
| ) | |
| HOMER VAN FLEET, *et al.*, ) | |
| ) | |
| Defendant/Counterclaimants. ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 11].

Now before the Court is the Motion to Dismiss the Counter-Claim for Failure to State a Claim [Doc. 14], filed by Plaintiff SGM Tactical, LLC. On April 5, 2012, the parties appeared before the undersigned to present oral arguments on the Motion to Dismiss. Attorneys Luis Bustamante and Katherine Layman were present representing Plaintiff/Counter Defendant SGM Tactical, LLC, ("SGM"). Attorney Richard Masters and John Butler were present representing the Defendant/Counterclaimants Homer Van Fleet, Intersor Inc., Clyde Woods, Katherine Bricking-Woods, Capital Money Management LLC, ("the Investors").

The Court has considered the materials and arguments before it, and for the reasons stated herein, the Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The parties entered into an agreement entitled "Business Agreement as Relates to Polymer Ammunition Magazines" on May 16, 2007, ("Business Agreement"), whereby the Defendants agreed to invest in the production of injection molded gun magazines by the Plaintiff in exchange for a share of the profit from the sale of such gun magazines.

Profit-sharing and allocation of business resources under this agreement has become a source of dispute amongst the parties. SGM filed this action in state court seeking a declaratory judgment to determine the respective rights and liabilities of the parties under the terms of the Business Agreement. This case was removed to the Eastern District of Tennessee on November 8, 2011.

On December 5, 2011, the Defendant Investors answered the Complaint and filed a conterclaim. [Doc. 7]. The Investors allege that the transaction in which the parties took part constituted a sale of a security under Chapter 292 of the Kentucky Revised Statues. They further allege acts and omissions in this sale which they cite in support of claims for: (1) Securities Fraud, pursuant to Kenn. Rev. Stat. Ann. §§ 292.320, 446.070; (2) Misrepresentation and Fraud; and (3) Breach of Contract. The Investors move the Court for judgment in their favor, $1.5 million, and fees and costs.

## II. ANALYSIS

SGM argues that each of the Investors' counterclaims should be dismissed.

### A. Violations of the Kentucky Securities Act

SGM first argues that Claim I of the Counterclaim, which alleges violation of the Kentucky Securities Act, fails to state a claim upon which relief can be granted. The Investors

2

initially responded in opposition to this position, but at the hearing, counsel for the Investors stated that they had agreed to dismiss this claim. Based upon the parties' agreement, the Court finds that the Motion to Dismiss the Investors' claim for violation of the Kentucky Securities Act is well-taken, and it will be **GRANTED**. Count I of the Counterclaim, which purports to state a claim for securities fraud, will be **DISMISSED**.

**B.    Fraud and Misrepresentation**

SGM next argues that Count II fails to state a claim for fraud and misrepresentation under the common law of Kentucky. SGM argues that to prevail on a claim of fraud, the Investors must demonstrate: (1) material representation, (2) that was false, (3) was known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted upon, and (6) causing injury. United Parcel Serv. Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999). SGM argues that the statements cited in the Counterclaim could not have induced the Investors because they were made after the parties had entered into their 2007 Business Agreement. [Doc. 15 at 12].

SGM also argues that the Investors have not fulfilled applicable pleading requirements. In support of this argument, SGM cites the Court to Coffey v. Foamex L.P., 2 F.3d 157 (6th Cir. 1993), wherein the Court of Appeals held that Fed. R. Civ. P. 9(b) requires that averments of fraud, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Id. at 161-162. The Investors' fraud and misrepresentation claim is one of fraudulent inducement, which the Investors' attorneys conceded at the motion hearing.

SGM further alleges that only one statement the Investors have cited actually predates the Business Agreement and thus could be considered as inducing. SGM maintains that this

statement that the business endeavor would generate hundreds of thousands of dollars is not actionable. SGM argues that such statements of opinion, alternatively referred to as "soft statements," cannot serve as the basis for a fraud action, because Kentucky state courts have held that a statement of opinion or prediction may not be the basis of an action for fraud. See St. Martin v. KFC Corp., 935 F. Supp. 898, 909 (W.D. Ky. 1996) (citing McHargue v. Fayette Coal & Feed Co., 283 S.W.2d 170, 172 (Ky.1955)).

The Investors initially responded by citing the Court to four "misleading statements and/or omissions [allegedly] made prior to the sale of the securities in question," which are:

> (1) The business venture would generate millions of dollars in gross profits from the sale of gun magazines and a complete line of accessories;
>
> (2) SGM failed to furnish quarterly sales reports and related financial information as promised;
>
> (3) SGM failed to produce profit and loss statements and up-to-date balance sheets when requested by the Counter-Plaintiffs;
>
> (4) SGM failed to disclose that proceeds from the Counter-Plaintiffs' investments were used by SGM for other business ventures in which they had no financial interest, including buying a Warehouse.

[Doc. 18 at 6-7]. The Investors argued that such statements should be actionable and cite the Court to Papa John's International, Inc. v. Dynamic Pizza, Inc., 317 F.Supp.2d 740, 749 (W.D. Ky. 2004). The Investors also argue that SGM's officers and agents owed a fiduciary duty to the Investors as shareholders. [Doc. 18 at 9]. In support of this position, the Investors cite the Court to Neese v. Brown, 405 S.W.2d 577 (Tenn. 1964).

SGM replies that the Investors have alleged they were "fraudulently induced" but they have, again, only identified only one pre-sale statement (#1 above, which Investors tacitly concede), which SGM maintains is too soft to be actionable. SGM also notes that in Papa John's

4

the court discussed the "exception to the general rule that statements of future prediction, such as future profit, cannot be considered fraudulent." 317 F. Supp. 2d at n.10. In Papa John's, he court stated that the exception becomes applicable when "the representing party has exclusive knowledge and should have been aware that the other party would rely heavily on their assertions." Id. (internal citations omitted).

The Court has considered the parties' positions and finds that the Investors have failed to state a claim for common-law fraud to induce upon which relief can be granted. First, the Court finds that only one of the statements cited to the Court by the Investors could possibly be a statement made to induce, which was capable of being acted upon. That alleged statement being: "The business venture would generate millions of dollars in gross profits from the sale of gun magazines and a complete line of accessories." [Doc. 18 at 6].[1]

The Supreme Court of the Commonwealth of Kentucky in McHargue v. Fayette Coal & Feed Co., 283 S.W.2d 170, 172 (Ky.1955)), explained, "[An a]ctionable misrepresentation must relate to a past or present material fact which is likely to affect the conduct of a reasonable man and be an inducement of the contract. A mere statement of opinion or prediction may not be the basis of an action." Id. at 172. The Supreme Court recently reviewed and reaffirmed the holding in McHargue noting that "forward-looking opinions about investment prospects or future sales performance such as those involved in this case generally cannot be the basis for a fraud claim." Flegles, Inc. v. TruServ Corp., 289 S.W.3d 544, 549 (Ky. 2009).

---

[1] This reiteration of the statement exponentially increases the amount of return promised. It should be contrasted with the actual allegation in the Investors' Counterclaim stating, "SGM, by and through its agent Phillip Cupelli, stated to Counterclaimants that, in exchange for their collective investment of sixty thousand dollars ($60,000.00), this business venture would generate **hundreds of thousands of dollars** in gross profits from the sale of gun magazines and a complete line of accessories, and stated to Counterclaimants and other witnesses that the company made in excess of 1.3 million dollars during 2009 alone." [Doc. 7 at 5]. Further, the Court would note that counsel for the Investors conceded that the Investors were paid 100's of thousands of dollars in gross profits.

5

The Court finds that SGM's alleged statement regarding millions of dollars and a full line of gun accessories does not relate to a past or present material fact. It is instead a prediction that may not serve as the basis of a common-law fraud in the inducement claim. It is a forward-looking opinion about investment prospects and future sales performance and, subject to the exception discussed below, it may not be relied upon as the basis for a fraud claim.

The Investors have cited the Court to Papa John's International, Inc. v. Dynamic Pizza, Inc., 317 F.Supp.2d 740, 749 (W.D. Ky. 2004). In Papa John's, the court held that claims based upon alleged statements and post-agreement assurances by Papa John's International – such as it would cost $125,000.00 cost to build a Papa John's restaurant and the upstate New York area supported the Papa John's concept – were excluded by merger and integration clauses. Id. at 746. In the alternative, the court noted that the statements were likely not actionable because "Kentucky courts have specifically held that it is unreasonable to rely on projections of future profits or future sales in a fraud case." Id. at 749. The court explained in a footnote that other courts have relied in part on party sophistication in deciding whether such statements are actionable. Id., n. 11.

The Court has considered the exception mentioned by the court in Papa John's, but the Court finds that it is not applicable to the facts of this case. Counsel for the Investors conceded at the hearing that they became involved with SGM by meeting its principal Phillip Cupelli at firearms trade shows. He also confirmed that Clyde Woods managed or owned a gun dealership in Indiana. Counsel was not able to direct the Court to any facts that would indicate the Investors were unsophisticated persons in this market. To the extent Papa John's delineates an exception to the general rule precluding claims based on statements of opinion, the Court finds

6

that the exception is not applicable in the instant case, as the defendants in this case are not inexperienced investors.

Based on the foregoing, the Court finds that Count II of the Investors' Counterclaim fails to state a claim for common-law fraud or misrepresentation on which relief can be granted. Accordingly, Count II will be **DISMISSED**, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Plaintiff's Motion to Dismiss will be **GRANTED** with regard to this count.

**C.     Breach of Contract**

Finally, SGM argues that Count III of the Counterclaim must be dismissed for failure to state a claim because it relies on an interpretation of the Business Agreement that is "inconsistent with the clear, unambiguous language of the Agreement." [Doc. 15 at 4]. Both parties cite the Court to Article V of the Business Agreement [Doc. 15-1], which states that it is the intent of SGM "to split 50/50 all net profits which remain after all net expenses as noted above have been fully paid. It is at the sole discretion of [SGM] to determine the final dollar amounts to be divided."

SGM emphasizes the discretion afforded to SGM and argues that the "breach of contract claim must be dismissed because the allegations are inconsistent with the terms of the plain terms of the Business Agreement." [Doc. 15 at 15]. SGM also contends that the Investors "seemingly overlook that they more than *tripled* their investment of $30,000 and received a return of their investment in less than thirty (30) months." [Doc. 15 at 15 (emphasis in the original)].

The Investors respond that the contract is far from clear and the Court, in construing the contract, is obligated to resolve ambiguities against the drafter and in favor of the non-movants. In their papers, the Investors imply that SGM is the drafter. [Doc. 18 at 11].

SGM replies that the Investors have not identified SGM as the drafter of the Business Agreement. SGM argues that the Court is not to resolve ambiguities at this stage, but is charged only with evaluating pleadings to dispose of the motion to dismiss. SGM argues that the Investors "may not now attempt to assert a breach of contract based on the amount of profit distributions when they agreed to allow SGM to retain *sole discretion* regarding this issue." [Doc. 19 at 13].

"Under Kentucky law, in order to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty." Ky. Farm Bureau Mut. Ins. Co. v. Blevins, 268 S.W.3d 368, 374 (Ky. App. 2008) (citing Strong v. Louisville & Nashville R. Co., 43 S.W.2d 11, 13 (1931)). In this case, the Investors pled that SGM undertook a duty to split profits with them 50/50 and to provide financial information, including balance sheets, under the Business Agreement. The terms in the Business Agreement in this case can be read to create such contractual obligations. The Investors pled that "profit payments and financial information has never been forthcoming and as such constitute material and substantial breaches of contract." [Doc. 7 at 9]. When construed in the light most favorable to the Investors, see Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010), these allegations demonstrate both the existence of and the breach of a contractually imposed duty. Accordingly, the Court cannot find that the Investors have failed to state a claim upon which relief can be granted.

Moreover, even if the Court were to convert this motion to dismiss to a motion for summary judgment and consider matters outside the pleadings, see Fed. R. Civ. P. 12(d), Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008), the Court finds that summary judgment is not appropriate in this case because there appears to be at least arguable ambiguities regarding the division of profits and whether it was to be done pursuant to a plan ("normally established" profit) or at SGM's sole discretion, as such the lack of the identity of the drafter of the contract constitutes a genuine dispute as to a material fact, see Fed. R. Civ. P. 56(a). The parties disagreed on what persons or entities should be considered drafter (for purposes of construing the language against such person) not only in their papers but also in their oral arguments. Summary judgment would be inappropriate with this material fact in dispute.

Accordingly, the Court finds that the Motion to Dismiss is not well-taken to the extent that it requests that Count III, which alleges a claim for breach of contract, be dismissed or decided in SGM's favor, and with regard to Count III, the Motion to Dismiss will be **DENIED**.

### III. CONCLUSION

Based on the foregoing, the Motion to Dismiss **[Doc. 14]** is **GRANTED IN PART** and **DENIED IN PART**. SGM's motion is **GRANTED** as to Counts I and II, and Counts I and II of the Counterclaim [Doc. 7] are **DISMISSED**. SGM's motion is **DENIED** as to Count III.

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge